UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA MILLS & MANUFACTURING, INC., | ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) 1:04-cv-01102-LJM-WTL ) |
| DOREL INDUSTRIES, INC., and DOREL JUVENILE GROUP, INC., Defendants. | ) ) ) ) |

**ORDER ON PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S ORDER REGARDING WILLFULNESS-RELATED DISCOVERY**

This cause is now before the Court on plaintiff's, Indiana Mills & Manufacturing, Inc. ("IMMI"), Objection to the Order of October 14, 2005, Regarding Willfulness-Related Discovery. In the October 14, 2005, Order ("October Order"), Magistrate Judge Lawrence denied IMMI's motion to compel willfulness discovery and granted defendants', Dorel Industries, Inc. and Dorel Juvenlie Group, Inc. (collectively, "Dorel"), motion for protective order. IMMI challenges Judge Lawrence's rulings on six grounds. Dorel contends that Judge Lawrence properly applied the law to the facts before him and that this Court should not overrule the October Order.

The Court has reviewed the October Order and the parties' arguments and for the reasons stated herein, the Court **SUSTAINS in part and OVERRULES in part** IMMI's Objection.

**I. BACKGROUND**

This is a patent infringement suit in which IMMI alleges that Dorel's child restraint seat infringes claims 8 and 11 of U.S. Patent No. 4,660,889 (the "'889 patent"). IMMI also alleges that

Dorel willfully infringed those claims. It is important to note that the most pertinent aspect of the claimed invention is the configuration of a belt adjustor for the harness system of the patented child restraint seat.

On or about August 18, 2005, Dorel notified IMMI that it would rely upon an advice-of-counsel defense to IMMI's allegations of willful infringement. Dorel produced to IMMI the relevant opinion letters and offered to make available Mr. Glover to testify to his reasonable reliance upon an attorney's, Mr. Jay Taylor, opinion that the Dorel adjuster and the Dorel car seats utilizing that adjuster do not infringe the '889 patent. However, Dorel also moved for a protective order to prevent IMMI from deposing Mr. Taylor, asserting that such a deposition is unlikely to lead to any admissible evidence.

On September 13, 2005, IMMI filed its Motion to Compel Willfulness Discovery and Opposition to Dorel's Motion for Protective Order. IMMI argued that having waived privilege with respect to Mr. Taylor's opinions, the Court should compel Dorel to produce all documents and witnesses related to the subject matter of its waiver. In addition, IMMI asked that the Court deny Dorel's Motion for Protective Order.

Predictably, IMMI argued that the scope of Dorel's waiver extended to all the opinions encompassed by the Mr. Taylor's opinions, including validity opinions, and that the waiver should apply to communications on the issues of infringement and validity post-filing. In contrast, and predictably, Dorel argued that the scope of the waiver was narrow because the only opinion disclosed in the communications by Mr. Taylor to Dorel related to infringement. Moreover, the waiver should not apply past the point at which IMMI issued to Dorel a cease and desist letter.

The October Order granted Dorel's Motion for Protective Order and denied IMMI's Motion

to Compel Willfulness Discovery. Specifically, it reads, in pertinent part:

1. Defendants have waived their attorney-client privilege only with respect to communications between Defendants and their Counsel directly related to the non-infringement analysis regarding the '889 Patent set forth in the October 3, 2001, November 2, 2002, and April 8, 2003, non-infringement opinions relied upon by Defendants as part of their advice-of-counsel defense.

2. The scope of this waiver extends to, but not later than, Defendants['] receipt of the cease and desist request contained in Mr. Wallen's letter to Mr. Cartwright on April 23, 2004.

3. Defendants have waived their attorney work-product protection only with respect to actual communications between Defendants and their Counsel prior to April 23, 2004, which directly relate to the non-infringement analysis regarding the '889 Patent set forth in the October 23, 2001, November 8, 2002, and April 8, 2003, non-infringement opinions relied upon by Defendants as part of their advice-of-counsel defense [sic].

4. Defendants shall review their privilege logs (Exhibits J, K and L attached to Plaintiff's Motion to Compel) and produce to Plaintiff those documents, if any, which fall within the scope of the waiver outlined above.

5. Plaintiff shall not take the depositions of Mr. Bruce Cazanave or Mr. Jeffrey Cartwright.

6. Any depositions taken of Messrs. Taylor, Ster, Weisentahl, Reynolds, or Balensiefer will be strictly limited in scope in accordance with the limited waiver of the attorney-client privilege as set forth above.

Oct. Order, at 1-2.

## II. STANDARDS

### A. OBJECTION TO MAGISTRATE JUDGE'S ORDER

The Court's review of a magistrate judge's discovery order is governed by Federal Rule of Civil Procedure 72(a) ("Rule 72(a)"), which states: "The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's

3

order found to be clearly erroneous or contrary to law." Using the clear error standard, the Court will overturn Magistrate Judge Lawrence's ruling in the instant case "only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

## B. WILLFULNESS DISCOVERY

The Court notes at the outset that the standards that pertain to willfulness discovery are in a state of flux because there have been few cases in which the Federal Circuit has addressed the issue of the waiver of attorney-client and work product privileges post its decision in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004). This Court finds that the best place to start is the principles that underlie the scope of the discovery to be had. With that in mind, the Court finds the following standards helpful in the analysis of the issues now before the Court.

To determine whether a defendant's infringement is willful, the jury must consider the totality of the circumstances, which may include an opinion from counsel on whether or not the allegedly infringing device does or does not infringe. *See id.* at 1342-43; *see also Mallinckrodt, Inc. v. Masimo Corp.*, 147 Fed. Appx. 158, 170 (Fed. Cir. 2005). When a defendant, like Dorel, chooses to rely upon an opinion of counsel as a defense to willful infringement, the scope of the waiver of attorney-client privilege and of the work product privilege becomes an issue. To determine the scope of the waiver of an attorney-client privilege, the Court must "weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1346, 1349-50

(Fed. Cir. 2005) (stating, also, that the law of the regional circuit applies to questions of waiver of the attorney-client privilege). Generally, the waiver applies to all communications related to the same subject matter. *Id.* (citing, *inter alia*, *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1416 (Fed. Cir. 1997)). And, "[t]he waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Id.* (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (further citation omitted)).

Under the work product doctrine, attorney work product has a qualified privilege. *See Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006). Rule 26(b)(3) codifies the doctrine and establishes the parameters under which such discovery may be had. Specifically, the rule states:

> a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney . . .) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3). Generally, then, the work product privilege extends only to an attorney's strategies and legal impressions, not facts. *See In re Unilin Decor N.V.*, 153 Fed. Appx. 726, 728 (Fed. Cir. 2005). However, like any privilege, it may be waived by disclosure. In the context of an opinion of counsel, the waiver would extend to communications pertaining to that advice so long as it is relevant to the pertinent inquiry, which is the alleged infringer's reasonable reliance on the opinion of counsel. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.

5

1994).

Under either privilege, attorney-client or work product, the Court must consider the extent of the disclosure and the balance of the interests of the parties under the principles that frame each privilege, or the fairness of the discovery requested. *Cf. Blackhawk Molding Co. v. Portola Packaging, Inc.*, No. 03 C 6060, 2004 WL 2211616, at *1 (N.D. Ill. Oct. 1, 2004) (discussing fairness as the touchstone of its rulings on the waiver of attorney-client and work product privileges).

### III. DISCUSSION

#### A. SUBJECT MATTER OF THE WAIVER

IMMI's first argument is that Magistrate Judge Lawrence erred when he decided that the subject matter of Dorel's waiver did not include validity of the '889 patent. IMMI contends that the opinion letters from counsel discussed invalidity issues, therefore, the Court should find that Dorel waived its privileges with respect to validity issues as well as infringement issues. Dorel argues that it did not rely upon any opinions related to the validity of the '889 patent, therefore, Magistrate Judge Lawrence correctly decided this issue.

Although the October Order does not outline the reasoning behind the decisions contained therein, the Court finds that the decision to limit the subject matter of the waiver to infringement was neither clearly erroneous nor contrary to law. As IMMI contends, the subject matter of the waiver turns on the information relied upon by Dorel in the opinion of counsel. Here, Dorel has made clear that the opinion of counsel upon which it relies are the letters dated October 23, 2001, November 8, 2002, and April 8, 2003. *See* Pl.'s Exhs. G, H, I. The October 23, 2001, letter references a prior validity analysis, apparently provided in a letter dated January 13, 1993, however, the content of that

letter is directed to an infringement analysis and reserves judgment on the issue of validity. Pl.'s Exh. G, at 19. There is reference to prior art in the infringement analysis, however, such references have only recently been called into question by the Federal Circuit. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc). Moreover, if the October 23, 2001, letter did include any invalidity analysis, it was redacted by Dorel before it produced it in support of its advice-of-counsel defense. *Id.* The fact that Dorel chose not to redact the validity analysis contained in the January 13, 1993, letter that was attached to the October 23, 2001, letter is of no moment because IMMI has not presented any evidence from which the Court could conclude that Dorel relied upon the validity opinion contained in the January 13, 1993, letter for its defenses. Absent such a showing, the Court is unwilling to extend the subject matter of the waiver to validity issues.

## B.  TEMPORAL SCOPE OF THE WAIVER

IMMI also contends that the October Order is clearly erroneous and contrary to law because it limits the discovery of documents related to the opinion of counsel to the date that Dorel received notice of the "cease and desist request contained in Mr. Wallen's letter to Mr. Cartwright on April 23, 2004." IMMI contends that there was no reason for this temporal restriction, particularly in light of the ongoing nature of Dorel's obligation to refrain from willful infringement. IMMI argues that the proper temporal scope of the waiver in this case should extend after this litigation is filed because the Court's claim construction "weakened, if not eviscerated," counsel's opinion. Pl.'s Obj. at 8.

In contrast, Dorel argues that the proper limitation on the temporal scope of its waiver is the date at which it reasonably ascertained it would be subject to suit. That date, argues Dorel, is the date upon which it received the cease and desist letter dated April 23, 2004.

The Court finds that the temporal limit on the waiver in the October Order is unnecessarily narrow. Most cases in which a court has considered the temporal scope of the waiver of the attorney-client and work product privileges, the cut-off date is the date the suit was filed. *See, e.g., BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 283 F. Supp. 2d 1000, 1003, 1005-08 (S.D. Ind. 2003) (discussing cases that deal with the pre-suit and post-suit scope of waiver regarding an advice-of-counsel defense). The case that Dorel relies upon for the proposition that the time limit is when the alleged infringer reasonably ascertained it would be subject to suit is *Eco Manufacturing LLC v. Honeywell International, Inc.*, No. 1:03-cv-0170-DFH, 2003 WL 1888988 (S.D. Ind. Apr. 11, 2003). In that case, a trademark infringement case, Judge Hamilton stated that "the court finds that the relevant subject matter is the intellectual property issues relating to Eco Manufacturing's development of a circular thermostat design, from approximately May 2001 through the date that Eco Manufacturing received Honeywell's 'cease-and-desist' letter in January 2003." *Id.* at *3. There is no further discussion about the proper end point of the waiver in *Eco*, although the Court did discuss the appropriate starting point. *See id.* Because there is no reasoning for why the *Eco* court chose to limit the end point of the waiver under those circumstances, this Court must look at the equities and circumstances of the instant case to determine the end point of the waiver.

Even if the correct standard for the inquiry is the one suggested by Dorel, a standard that sets the temporal limit at the time when the defendant reasonably anticipates the litigation, the date that Dorel received the April 23, 2004, letter from IMMI is not that date. Like in many cases where the patent holder puts an alleged infringer on notice that it is aware of the infringement, the April 23, 2004, letter from IMMI to Dorel opens up the possibility to negotiate a resolution without further action. *See* Def.'s Exh. 2. The letter does suggest that without a prompt response, IMMI would take

other action, but it makes no further threat of a law suit. If anything, after receiving such a letter, a reasonable client would seek reassurance from its opinion counsel that he will not change his opinion. It is the Court's veiw that the April 23, 2004, letter, is not the point at which Dorel could reasonably anticipate the litigation. This is further evidenced by the approximate three-month delay between the April 23, 2004, letter and the filing of this suit.

The Court cannot agree with IMMI, however, that the difference between the claim construction relied upon by Dorel's opinion counsel and the Court's claim construction should extend the waiver post filing. As discussed by Judge Baker in *Reilly*, there are three view points on whether the temporal scope of the attorney-client and work product privileges should extend post filing. *Reilly*, 283 F. Supp. 2d at 1005-08. The first view point finds that invoking the advice-of-counsel defense acts as the broadest waiver possible, and concludes that fairness dictates that even post-filing attorney-client documents and work product documents related to the subject matter are relevant to the client's state of mind. *See id.* at 1005 (citing cases). The second view point finds that the waiver under these circumstances is narrow, and limits disclosure to communications prior to suit, and even more narrowly limits disclosure of work product materials. *See id.* at 1005-06 (citing cases). The third view point, described by Judge Baker as the "middle ground," *see id.* at 1006, "reason[s] that, consistent with the principle of fairness, a party should not be allowed to rely on self-serving statements while withholding damaging or contradictory information under the pretense of attorney-client privilege." *Id.* This viewpoint also restricts access to work product that was not disclosed to the client. *Id.*

For the most part, this Court agrees with the third view point that the circumstances of the case should dictate, in fairness, the extent of the waiver. In the instant case, there is no evidence that

9

Dorel has changed its position on infringement, despite the Court's claim construction. In other words, unlike the defendant in *Reilly* who changed its position on non-infringement during the litigation, Dorel has been consistent in its contentions of the reasons that its product does not infringe the '889 patent.

In summary, the Court concludes that in the circumstances of this case, the proper temporal scope of the waiver of attorney-client and work product privileges is the date this law suit was filed.

### C. SCOPE OF WORK PRODUCT PRIVILEGE WAIVER

IMMI contends that the October Order improperly limited the waiver of attorney work product to communications shared with Dorel that are "directly related to" the opinions of counsel. IMMI argues that this aspect of the October Order improperly precludes discovery of work product that forms the basis of the opinion of counsel. Moreover, IMMI asserts that the Court should undertake an *in camera* review of questionable documents on IMMI's privilege log to ensure that Dorel is complying with the Court's orders.

Dorel argues that like the Court in *Eco* and *Reilly*, in this instance, only communications shared by opinion counsel with Dorel should be disclosed because the mental impressions, conclusions, opinions, or legal theories of opinion counsel are not relevant to the reasonableness of Dorel's reliance on the attorney's opinion.

To the extent that the October Order limits work product discovery in the relevant time period to that "actually communicated" to the client, the Court fails to see the difference between that type of communication and communication that already falls under the attorney-client privilege. In *Eco* and *Reilly*, the Court correctly limited the work product waiver to that which had been

10

disclosed to the client because it is the client's knowledge about the opinion of counsel that is relevant to the advice-of-counsel defense. By making co-extensive the waiver of the attorney-client and work product privileges, the focus remains upon what the client knew about the opinion of counsel, how it was formulated, and whether it was sound, rather than the attorney's view of these same issues.

However, the information that opinion counsel relied upon, and from whom he received it, is pertinent to the reasonableness of Dorel's reliance on the opinion. To the extent that this is factual information, rather than opinions, thoughts or impressions of counsel, this information is discoverable and Dorel cannot hide behind the work product privilege to prevent IMMI from obtaining this information.

The Court finds that the October Order correctly defined the limits of the work product waiver, unless such limitation precludes IMMI from discovering the factual basis for the opinion itself; in such case, those work product materials are also discoverable. With respect to IMMI's argument that the October Order impermissibly allowed Dorel to decide which documents fell within the scope of that Order, the Court finds no error, factual or otherwise.

### D. DEPOSITION OF JEFF CARTWRIGHT

IMMI asserts that the October Order unduly limited its ability to obtain relevant testimony from the decision maker at Dorel, Jeff Cartwright. Dorel contends that further testimony from Jeff Cartwright on this issue is unnecessary because Jeff Cartwright did not review the legal materials before making the decision to switch to the allegedly infringing adjuster design.

The Court finds that the decision to deny IMMI the opportunity to depose Jeff Cartwright on

the subject matter of the opinion letters was neither clearly erroneous nor contrary to law. It is uncontroverted that Jeff Cartwright made the decision to switch to the allegedly infringing adjuster design. However, Jeff Cartwright testified in his deposition that he did not review the legal materials, including the opinions of counsel, when he made the decision to go forward with the switch. Instead, Jeff Cartwright relied upon Richard Glover's assurance that Dorel's new design did not infringe IMMI's patent. Based on these facts, the Court concludes that no new information from Jeff Cartwright regarding the reasonableness of Dorel's reliance on the opinion of counsel is necessary because he had no knowledge of the opinion.

### E.  UNFAIR PENALTY

IMMI contends that the October Order unfairly penalizes IMMI for Dorel's decision to employ the same trial counsel as opinion counsel. IMMI argues that the Order implicitly protects Dorel from its own questionable decision because it necessarily blurs the distinction between counsel's role as advice counsel and trial counsel. Dorel argues that there is no implicit favoritism in the October Order because there was never any contention before Magistrate Judge Lawrence that information was withheld because Dorel's opinion counsel and trial counsel were the same.

The Court has only found minimal error in the October Order with respect to the temporal scope of the waiver, the decision upon which had nothing to do with the identity of opinion and/or trial counsel. Therefore, the Court cannot agree that the October Order unfairly penalizes IMMI for Dorel's decision to employ the same person as both opinion and trial counsel.

## IV. **CONCLUSION**

For the foregoing reasons, the Court **SUSTAINS in part and OVERRULES in part** plaintiff's, Indiana Mills & Manufacturing, Inc., Objection to the Order of October 14, 2005, Regarding Willfulness-Related Discovery. Parties shall follow the guidelines set forth in the October 14, 2005, Order except as modified herein. Plaintiff's Motion for Oral Argument is **DENIED**.

IT IS SO ORDERED this 16th day of February, 2006.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Timothy Quinn Delaney
BRINKS HOFER GILSON & LIONE
tdelaney@usebrinks.com

Gregory Andrew Duff
ICE MILLER LLP
gregory.duff@icemiller.com

Sanders N. Hillis
BRINKS HOFER GILSON & LIONE
shillis@usebrinks.com

John F. Prescott Jr
ICE MILLER LLP
john.prescott@icemiller.com

A. James Richardson
BRINKS HOFER GILSON & LIONE
jrichardson@usebrinks.com

Daymon L. Ruttenberg
BRINKS HOFER GILSON & LIONE
druttenberg@usebrinks.com

Samuel Ellet Shehadeh
BRINKS HOFER GILSON & LIONE
ses@brinkshofer.com

Lawrence A. Steward
BRINKS HOFER GILSON & LIONE
lsteward@usebrinks.com

Michael A. Swift
ICE MILLER LLP
michael.swift@icemiller.com

Jay G. Taylor
ICE MILLER LLP
jay.taylor@icemiller.com