UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA MILLS & MANUFACTURING, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | )     1:04-cv-01102-LJM-WTL ) |
| DOREL INDUSTRIES, INC., and DOREL JUVENILE GROUP, INC., | ) ) ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S EMERGENCY MOTION FOR RECONSIDERATION**

This cause is now before the Court on plaintiff's, Indiana Mills & Manufacturing, Inc. ("IMMI"), Emergency Motion for Reconsideration of February 16, 2006, Order on Plaintiff's Objection to Magistrate Judge's Order Regarding Willfulness-Related Discovery. In the February 16, 2006, order ("Feb. Order"), the Court sustained in part and overruled in part IMMI's objection to an October 14, 2005, order ("MJ Order"), by Magistrate Judge Lawrence that denied IMMI's motion to compel willfulness discovery and granted defendants', Dorel Industries, Inc. and Dorel Juvenile Group, Inc. (collectively, "Dorel"), motion for protective order.

In the instant motion, IMMI seeks to broaden the scope of discovery allowed by the Feb. Order in light of the Federal Circuit's recent opinion in *In re EchoStar Communications Corp.*, Misc. Nos. 803, 805, 2006 WL 1149528 (Fed. Cir. May 1, 2006), in which the Federal Circuit further defined the scope of the waiver of the attorney-client and work-product privileges when a defendant asserts an advice-of-counsel defense to allegations of willful infringement. Dorel argues that IMMI reads *EchoStar* too broadly and that the facts of this case are distinguishable.

The Court held a hearing on the matter on May 24, 2006, to give the parties an opportunity

to discuss with the Court the salient points of the *EchoStar* opinion before it issued a ruling. For the reasons stated herein, the Court **GRANTS in part and DENIES in part** IMMI's motion for reconsideration.

## I. FACTUAL & PROCEDURAL BACKGROUND

This is a patent infringement suit in which IMMI alleges that Dorel's child restraint seat infringes claims 8 and 11 of U.S. Patent No. 4,660,889 (the "'889 patent"). IMMI also alleges that Dorel willfully infringed those claims. It is important to note that the most pertinent aspect of the claimed invention is the configuration of a belt adjustor for the harness system of the patented child restraint seat.

On or about August 18, 2005, Dorel notified IMMI that it would rely upon an advice-of-counsel defense to IMMI's allegations of willful infringement. Dorel produced to IMMI the relevant opinion letters and offered to make available Mr. Glover to testify to his reasonable reliance upon an attorney's, Mr. Jay Taylor, opinion that the Dorel adjuster and the Dorel car seats utilizing that adjuster do not infringe the '889 patent. However, Dorel also moved for a protective order to prevent IMMI from deposing Mr. Taylor, asserting that such a deposition is unlikely to lead to any admissible evidence.

On September 13, 2005, IMMI filed its Motion to Compel Willfulness Discovery and Opposition to Dorel's Motion for Protective Order. IMMI argued that having waived privilege with respect to Mr. Taylor's opinions, the Court should compel Dorel to produce all documents and witnesses related to the subject matter of its waiver. In addition, IMMI asked that the Court deny Dorel's Motion for Protective Order.

Predictably, IMMI argued that the scope of Dorel's waiver extended to all the opinions encompassed by Mr. Taylor's opinions, including validity opinions, and that the waiver should apply to communications on the issues of infringement and validity post-filing. In contrast, and predictably, Dorel argued that the scope of the waiver was narrow because the only opinion disclosed in the communications by Mr. Taylor to Dorel related to infringement. Moreover, the waiver should not apply past the point at which IMMI issued to Dorel a cease and desist letter.

The MJ Order, dated October 14, 2005, granted Dorel's Motion for Protective Order and denied IMMI's Motion to Compel Willfulness Discovery. Specifically, it reads, in pertinent part:

1. Defendants have waived their attorney-client privilege only with respect to communications between Defendants and their Counsel directly related to the non-infringement analysis regarding the '889 Patent set forth in the October 3, 2001, November 2, 2002, and April 8, 2003, non-infringement opinions relied upon by Defendants as part of their advice-of-counsel defense.

2. The scope of this waiver extends to, but not later than, Defendants['] receipt of the cease and desist request contained in Mr. Wallen's letter to Mr. Cartwright on April 23, 2004.

3. Defendants have waived their attorney work-product protection only with respect to actual communications between Defendants and their Counsel prior to April 23, 2004, which directly relate to the non-infringement analysis regarding the '889 Patent set forth in the October 23, 2001, November 8, 2002, and April 8, 2003, non-infringement opinions relied upon by Defendants as part of their advice-of-counsel defense [sic].

4. Defendants shall review their privilege logs (Exhibits J, K and L attached to Plaintiff's Motion to Compel) and produce to Plaintiff those documents, if any, which fall within the scope of the waiver outlined above.

5. Plaintiff shall not take the depositions of Mr. Bruce Cazanave or Mr. Jeffrey Cartwright.

6. Any depositions taken of Messrs. Taylor, Ster, Weisentahl, Reynolds, or Balensiefer will be strictly limited in scope in accordance with the limited waiver of the attorney-client privilege as set forth above.

Oct. Order, at 1-2.

On October 31, 2005, IMMI objected to the MJ Order arguing that the order was clearly erroneous and contrary to law because it held: (1) that the subject matter of Dorel's waiver did not include validity of the '889 patent; (2) that discovery of documents related to the opinion of counsel should be limited to the date that Dorel received notice of a cease and desist letter on April 23, 2004; and (3) that the work product waiver extended only to communications shared with Dorel that are "directly related to" the opinions of counsel.[1]

On February 16, 2006, the Court issued its order on IMMI's objections to the MJ Order. The Feb. Order held, in relevant part:

(1) that the scope of the waiver did not extend to counsel's opinion regarding validity because there is no evidence that Dorel relied upon same in its assertion of non-infringement;

(2) that the scope of the waiver did not extend beyond the filing of the instant law suit because there is no evidence to suggest that Dorel changed its non-infringement arguments post-filing and the danger of using the attorney-client and work-product privileges as a sword was minimal under the circumstances of this case; and

(3) that the scope of the work product waiver extended only to communications with the client, unless those communications precluded IMMI from discovering the factual basis for the opinions themselves, in which case the Court concluded these work-product documents were included in the waiver.

On April 3, 2006, Dorel filed a Motion for Summary Judgment on IMMI's Claims of Willful Infringement, to which IMMI filed a response on May 8, 2006.

On May 1, 2006, the Federal Circuit issued its opinion in *EchoStar*. Shortly thereafter, on

---

[1]There were other allegations of error, however, they are inextricably intertwined the these three decisions and were not specifically addressed by the instant motion. Therefore, the Court limits the current discussion to these three allegations of error in the MJ Order, and subsequently, the Court's resolution of those issues in February 2006.

4

May 12, 2006, IMMI filed the motion at issue here. In the instant motion, IMMI contends that *EchoStar* changed the law on the scope of the waiver of attorney-client and work-product privileges in willfulness-related discovery and, therefore, before further briefing occurs on Dorel's Motion for Summary Judgment on IMMI's Willful Infringement Claim, the Court should reconsider its prior ruling on the issue.

IMMI contends that *EchoStar* held : (1) that it is improper to limit the temporal scope of the waiver to pre-suit communication; (2) that the work-product waiver extends to any attorney documents that reference or describe a communication with the client; (3) that the Court should review *in camera* any documents in which there is a question whether material should be redacted; and (4) that the scope of the waiver includes any documents or opinions that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused, and is not dependent upon what the accused infringer actually relied upon. In light of this interpretation of *EchoStar*, IMMI asserts that the Court's Feb. Order conflicts with the holdings in *EchoStar* because it limits the temporal scope of the waiver to the date the complaint was filed, July 1, 2004, although ongoing infringement continued until the patent expired on December 17, 2005, because it limits the work product waiver to documents "actually communicated" to the client, because it requires no *in camera* inspection of redacted documents, and because it limits the privilege waiver based on the alleged infringer's position as to which opinion it relied upon.

Dorel contends that IMMI has read *EchoStar* too broadly and that it is distinguishable on its facts. Moreover, Dorel contends that the Court's Feb. Order correctly applied the law of waiver even post-*EchoStar* and, in any event, the Court must consider in this case the circumstances presented where opinion counsel and trial counsel are one and the same.

## II. STANDARD

A motion to reconsider is appropriate where there is "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). As the Court's Feb. Order was interlocutory in nature, it may be reconsidered at any time prior to final judgment. *See Matter of 949 Erie St., Racine Wis.*, 824, F.2d 538, 541 (7th Cir. 1987) (citing *Cameo Convalescent Ctr., Inc. v. Percy*, 800 F.2d 108 (7th Cir. 1986)). A court may, however, decline to reconsider an issue already decided under the "law of the case" doctrine. *Id.* at 541-2 (citing *Messinger v. Anderson*, 225 U.S. 436 (1912)).

## III. DISCUSSION

The first issue for the Court is whether or not *EchoStar* was a controlling or significant change in the law; IMMI contends that it was, Dorel asserts it was not. The Court finds that the *EchoStar* decision clarified issues left undecided by the Federal Circuit's *en banc* decision in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004), and that the clarification has some effect on the decisions made by the Court in its Feb. Order.

A review of the facts in *EchoStar*, as presented by the Federal Circuit, is warranted. The Federal Circuit recites the following background facts:

> TiVo sued EchoStar for infringement of its U.S. Patent No. 6,233,389 ("the '389 patent"). In response to the allegation of willful infringement, EchoStar asserted the defense of reliance on advice of counsel. Prior to the filing of the action, EchoStar relied on advice of in-house counsel. After the action was filed, EchoStar obtained additional legal advice from Merchant & Gould but elected not to rely on it. Presumably to explore further EchoStar's state of mind in determining that it did not infringe the patent, TiVo sought production of documents in the possession of

6

>EchoStar and Merchant & Gould. The district court held that by relying on advice of in-house counsel EchoStar waived its attorney-client privilege and attorney work-product immunity relating to advice of any counsel regarding infringement, including Merchant & Gould. The district court indicated that the scope of the waiver included communications made either before or after the filing of the complaint and any work product, whether or not the product was communicated to EchoStar. The district court also held that EchoStar could redact information related only to trial preparation or information unrelated to infringement. EchoStar produced communications, including two infringement opinions from Merchant & Gould, but did not produce any work product related to the Merchant & Gould opinions.
>
>* * *
>
>[T]he district court issued an order that clarified its previous order and stated that the waiver of immunity extended to all work product of Merchant & Gould, whether or not communicated to EchoStar. The district court determined that the documents could be relevant or lead to the discovery of admissible evidence because they might contain information that was conveyed to EchoStar, even if the documents were not themselves conveyed to EchoStar. EchoStar petitions this court for a writ of mandamus with respect to the Merchant & Gould documents not provided to EchoStar, challenging the district court's rulings.

*EchoStar*, 2006 WL 1149528 at Part I (footnotes omitted).

The *EchoStar* court applied the law of the Federal Circuit to the substantive questions of the scope of the waiver of attorney-client privilege and work-product immunity in the advice-of-counsel defense context. *Id.* at Part III. The Court addressed the scope of the attorney-client waiver first because EchoStar argued that its reliance on in-house counsel is different subject matter from an outside opinion of counsel. To address this argument, the *EchoStar* court reiterated that "'[t]he widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all of other communications relating to the same subject matter.'" *Id.* Part III.A. (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)). The *EchoStar* court stated that EchoStar's argument was without merit. It held that "when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-

7

client communications relating to the same subject matter, including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould." *Id.* (citing *Akeva LLC v. Mizuno Corp.*, 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003)).

The *EchoStar* court next addressed whether the district court's order was too broad when it included "within the waiver's scope documents that were never communicated from Merchant & Gould (the attorney) to EchoStar (the client)." *Id.* Part III.B. The *EchoStar* court relied on traditional work-product immunity waiver law to decide this issue starting with Federal Rule of Civil Procedure 26(b). The court stated:

> In contrast to the attorney-client privilege, the work-product doctrine, or work-product immunity as it is also called, can protect "documents and tangible things" prepared in anticipation of litigation that are both non-privileged and relevant. Fed. R. Civ. P. 26(b)(3). Unlike the attorney-client privilege, which protects all communication whether written or oral, work-product immunity protects documents and tangible things, such as memorandums, letters and e-mails. *See generally Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366 (D.C. Cir. 2005). We recognize work-product immunity because it promotes a fair and efficient adversarial system by protecting "the attorney's thought processes and legal recommendations" from the prying eyes of his or her opponent.
>
> * * *
>
> Like the attorney-client privilege, however, the work-product doctrine is not absolute. *See In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988). First, a party may discover certain types of work product if they have "substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent . . . by other means." Rule 26(b)(3). . . .
>
> Second, a party may discover work product if the party waives its immunity. [citations omitted] However, work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege. *Martin Marietta Corp.*, 856 F.2d at 626. Instead, work-product waiver only extends to "factual" or "non-opinion" work product concerning the same subject matter as the disclosed work product. *See id.* at 625 (noting that a party "impliedly waived the work-product privilege as to all non-opinion work-product on the same subject

8

> matter as that disclosed.") (*citing* [sic] [*United States v.* ]*Nobles*, 422 U.S. [225,] 239 [1975]).
>
> We recognize that the line between "factual" work product and "opinion" work product is not always distinct, especially when, as here, an attorney's opinion may itself be "factual" work product. When faced with the distinction between where that line lies, however, a district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product.

*Id.*

When it applied this standard, the *EchoStar* court did so to three categories of work product at issue in the case before it:

> (1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communicated to or from the client.

*Id.* The *EchoStar* court held that the first category of work product is discoverable. *Id.*

But in addressing the later two categories, the *EchoStar* court acknowledged that "[b]y asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *Id.* Rather, a court must ensure that the "[w]ork-product waiver extends only so far as to inform the court of the *infringer's* state of mind." *Id.* (emphasis in original). Legal correctness of the opinion is not the issue, but whether the opinion is thorough enough to instill a belief in the infringer that a court may hold the patent not infringed. *Id.* "The overarching goal of waiver in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *Id.* (citing *Fort James Corp.*, 412 F.3d at 1349; *Martin Marietta*

*Corp.*, 856 F.2d at 626; *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982)).

Therefore, the *EchoStar* court concluded that work product that is never communicated to the client "provides little if any assistance to the court in determining whether the accused knew it was infringing, and any relative value is outweighed by the policies supporting the work-product doctrine." *Id.* However, in the third category of documents, there may be work-product material that would have bearing on what the accused infringer knew, but were never themselves communicated to the client. *Id.* Such communications, the *EchoStar* court concluded, "will aid the parties in determining what communications were made to the client and protect against intentional or unintentional withholding of attorney-client communications from the court." *Id.* The *EchoStar* court suggested that, if necessary, where there are several types of communication in one document, some of which requires redaction, "the district court may review such material *in camera*." *Id.*

Applying these holdings to the Court's Feb. Order, the Court finds that it must reconsider its ruling on the temporal scope of the waiver in this case and it must reconsider the scope of the work-product waiver. The Court declines to entertain IMMI's arguments with respect to the Court's decision to limit the waiver to documents reflecting opinions of counsel on infringement as the Court does not agree with IMMI that the *EchoStar* opinion squarely addressed that issue.

With respect to the temporal scope of the waiver, the Court decided that in determining the temporal scope of the waiver, the Court should consider the circumstances of the case and, consistent with the principle of fairness, ensure that a party not be allowed to rely on self-serving statements while withholding contradictory information under the pretense of attorney-client or work-product privilege. In making this balance, the Court found that there was no evidence that Dorel had changed its position on infringement at any time either prior to or post filing. Because Dorel had been

10

consistent in its contentions on non-infringement, there was no reason to extend the waiver post filing.

Even in light of the *EchoStar* opinion, the Court does not change its opinion in this case. The *EchoStar* court opined that even post filing attorney-client privileged and work-product privileged information that has bearing on the question of willful infringement is discoverable. However, the *EchoStar* opinion made such a ruling in the context of discovery from an outside attorney who had provided opinion on the infringement issue after suit. There is no indication that the *EchoStar* court intended to extend this waiver to communication of trial counsel or to work product of trial counsel. In fact, that issue was not before the Court. The facts of this case are different. There is no allegation in this case that Dorel received additional advice of counsel post filing, other than advice from counsel in the course of litigation.

Even if the *EchoStar* opinion is read to have held that discovery of post-filing privileged information regardless of its source, and the Court recognizes that such an argument could have merit,[2] the *EchoStar* court appears to agree with this Court that a balancing of the need for discovery with the need to protect attorney-client and work-product privilege communications and/or

---

[2]The *EchoStar* court paints with a broad brush when discussing the temporal scope of the waiver in this case and cites *Akeva LLC v. Mizuno Corp.*, 243 F. Supp. 2d 418 (M.D.N.C. 2003), in support of its holding that the Merchant & Gould documents at issue in the case were discoverable. The *Akeva* court found that even the opinions of trial counsel on the infringement issue were discoverable. *Id.* at 423. But, *Akeva* never addressed the question of work product, only attorney-client privilege. *Id.* at 423 n.6.

As the Court explained in its prior order, there is merit in extending the temporal scope of the waiver beyond filing of the suit in cases where there is a fear that post-filing non-infringement opinions, whether they be of trial counsel, in-house counsel, or third-party outside counsel, differ from those pre-filing and have bearing on the reasonableness of the alleged infringer's reliance on advice of counsel. However, the Court does not agree with IMMI that the *EchoStar* case holds that the temporal scope of the waiver always extends post filing.

documents is necessary. In the instant case, there is no evidence that discovery of post-filing attorney-client privileged or work-product privileged documents would uncover anything contrary to the opinions provided prior to trial. In such a case, the information would be cumulative and its probative value would be outweighed by the policies protecting attorney-client privileged and work-product privileged information. As such, the Court is unwilling to broaden the temporal scope of the waiver post filing in this case.

With respect to the scope of the work-product privilege waiver, the Court finds that according to *EchoStar*, the Court's prior definition was too narrow. The Court did concern itself with the documents relied upon by opinion counsel that may not have been disclosed to the client, however, the Court did not address documents that reflect conversations or communications with the client that were never disclosed to the client. It is this later category of documents that the Federal Circuit in *EchoStar* clearly stated were discoverable. As such, the Court's Feb. Order must be modified to include discovery of such documents, pre-filing, in this case.

## IV. CASE MANAGEMENT PLAN DEADLINES GOING FORWARD

The Court recognizes that both parties are interested in keeping the current August 21, 2006, trial date for any issues that will remain in this matter after the Court rules on the multiple pending summary judgment motions. Therefore, the parties shall follow this schedule regarding the additional discovery allowed by this order:

1. Defendant shall supplement its discovery on or before Friday, June 2, 2006. If there are questionable documents, they shall be submitted to the Court for *in camera* inspection on or before Thursday, June 1, 2006.

2. Plaintiff shall have to and including Monday, June 12, 2006, to complete any

      supplemental depositions that are required.

3.     Plaintiff shall have to and including Friday, June 16, 2006, to submit any supplemental response to Defendant's Motion for Summary Judgment on IMMI's Willful Infringement Claim.

4.     Defendant's reply on its Motion for Summary Judgment on IMMI's Willful Infringement Claims shall be due on or before Wednesday, June 28, 2006.

Any currently-pending briefing deadlines on the pending motions for summary judgment are hereby vacated.

## V. CONCLUSION

For the foregoing reasons, plaintiff's, Indiana Mills & Manufacturing, Inc., Emergency Motion for Reconsideration of February 16, 2006, Order on Plaintiff's Objection to Magistrate Judge's Order Regarding Willfulness-Related Discovery, is **GRANTED in part and DENIED in part**. Defendant's, Dorel Industries, Inc. and Dorel Juvenile Group, Inc., Motion for Extension of Time to File Reply is **GRANTED**. The parties shall proceed as directed in this Order.

IT IS SO ORDERED this 26th day of May, 2006.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

13

Electronically distributed to:

Timothy Quinn Delaney
BRINKS HOFER GILSON & LIONE
tdelaney@usebrinks.com

Gregory Andrew Duff
ICE MILLER LLP
gregory.duff@icemiller.com

Sanders N. Hillis
BRINKS HOFER GILSON & LIONE
shillis@usebrinks.com

John F. Prescott Jr
ICE MILLER LLP
john.prescott@icemiller.com

A. James Richardson
BRINKS HOFER GILSON & LIONE
jrichardson@usebrinks.com

Daymon L. Ruttenberg
BRINKS HOFER GILSON & LIONE
druttenberg@usebrinks.com

Samuel Ellet Shehadeh
BRINKS HOFER GILSON & LIONE
ses@brinkshofer.com

Lawrence A. Steward
BRINKS HOFER GILSON & LIONE
lsteward@usebrinks.com

Michael A. Swift
ICE MILLER LLP
michael.swift@icemiller.com

Jay G. Taylor
ICE MILLER LLP
jay.taylor@icemiller.com